Ronald K. RISCHE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–00671–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 28, 1988.
Rehearing Denied March 3, 1988.

Stanley G. Schneider, Houston, for appellant.

John B. Holmes, Harris County Dist. Atty., William J. Delmore, III, Harris County Asst. Dist. Atty., for appellee.

Before EVANS, SAM BASS and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Appellant was indicted for murder. A jury found him guilty of the offense of voluntary manslaughter and assessed punishment at 12 years confinement and a $1000 fine. Appellant asserts 14 points of error.

The complainant and appellant were co-workers and friends. Appellant testified that over a period of several months, he had an affair with the complainant's wife. In November of 1984, the complainant's wife told the complainant about the affair and explained that she wanted a divorce.

Thereafter, the complainant and appellant engaged in several conversations in which the complainant arranged to return certain items to appellant. Appellant continued to see the complainant's wife during this period of time. In February of 1985, the complainant telephoned appellant and told him that he would be over shortly to return some additional items. Appellant testified that he feared for his safety and placed his pistol on the sofa beside him for protection. When the complainant arrived, he and appellant engaged in a heated argument over the complainant's wife. Appellant subsequently shot the complainant three times. Except for a small pocket knife, the complainant was apparently unarmed.

Shortly thereafter, appellant called the police and told the dispatch personnel that he had shot the complainant in self-defense. When the police arrived, appellant repeated his claim of self-defense. He was arrested and charged with murder.

In his first four points of error, appellant asserts that the trial court's denial of his motions for mistrial, continuance, and new

trial deprived him of his right to a fair trial under both the United States and Texas Constitutions.

At trial, appellant intended to offer an expert witness in crime reconstruction to support his claim of self-defense. However, before he was able to do so, the expert suffered a heart attack and died in the hallway outside the courtroom. Appellant requested a mistrial, which the court denied. He then sought a continuance in order to find a substitute. He informed the court, on the record, of the expert's proposed testimony and its materiality to his case. The trial court offered him one week, but appellant explained that he needed "a continuance for four weeks or more" to find another witness equally qualified. The State argued that a continuance was unnecessary because the proposed testimony was cumulative of evidence already presented, and that the requested length of time would result in an unreasonable delay. The trial court denied appellant's request for a continuance. Subsequently, appellant sought a new trial on the grounds that the expert's opinion testimony was material to his case and that the denial of the continuance deprived him of his constitutional right to a fair trial. The expert's written report was introduced into evidence at the hearing on the motion for new trial. The trial court again denied appellant's request.

It is within the sound discretion of the trial court to grant or deny motions for continuance. The court's decision will be reversed only upon a clear showing of abuse of discretion. *Hernandez v. State,* 643 S.W.2d 397, 399 (Tex.Crim.App.1982).

Tex.Code Crim.P.Ann. art 29.13 (Vernon 1966) states that where a continuance is sought during trial, the applicant must satisfy the court that "by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had."

For appellant to have been deprived of his constitutional right to a fair trial, the expert's proposed testimony must have been material to his case. In *Quinones v. State,* 592 S.W.2d 933, 941 (Tex.Crim.App.

1980), involving the State's failure to disclose some exculpatory evidence, the Court of Criminal Appeals defined "materiality" under Texas law in the due process terms used by the United States Supreme Court in *United States v. Agurs,* 427 U.S. 97, 108–110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). The court held that "the mere possibility that an item of undisclosed evidence might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." It stated that in determining materiality, the omission of evidence must be evaluated in the context of the entire record, and that constitutional error is committed only if the omitted evidence creates a reasonable doubt that did not otherwise exist.

Under both the Court of Criminal Appeals' and the United States Supreme Court's definition of materiality, the absence of the expert's opinion testimony, in the instant case, was not sufficiently material to warrant a mistrial, or an indefinite delay of the proceedings, or a new trial.

At trial, appellant's claim of self-defense was based on his contention that the complainant threatened to kill him. Appellant testified that he shot the complainant when the latter lunged toward him. Appellant's attorney stated that his expert would have testified, based on his reconstruction of the scene, the relative position of the parties at the time of the shooting, and the autopsy report, that it was his opinion that the complainant was shot while in a forward motion, thus supporting appellant's testimony and claim of self-defense.

During the cross-examination of Officer R.L. Ferguson of the Houston Police Department, appellant first elicited testimony about the relative positions of the parties at the time of the shooting. The officer testified that, in his opinion, the complainant was either sitting in a chair or standing up at the time that he was shot. He stated that he did not believe that the complainant was moving forward. The State next called the assistant medical examiner, who testified on cross-examination and redirect that in his opinion the complainant, more

probably than not, was standing up and moving forward when he was shot. He further testified that had the complainant been standing still, the force of the bullets would have caused him to fall backward, not forward as he did. At the hearing on the motion for new trial, appellant's attorney testified that appellant's expert had given the medical examiner all of the information that he had collected in his investigation.

Appellant was able to elicit from the State's expert the very opinion that his own expert would have offered, or a stronger one. The deceased expert's report showed that the evidence was "consistent" with the complainant being shot while he was in forward motion; the State's medical examiner testified that "he believed" the complainant was shot while in forward motion. Further, the State's witness repeated the same opinion on redirect examination by the prosecutor. Additionally, appellant himself testified that the complainant was moving forward at the time of the shooting. Therefore, the expert's opinion testimony would have been merely cumulative of expert opinion evidence already presented.

Moreover, the Court of Criminal Appeals has held that if the applicant for a continuance, based on the absence of a witness, does not present evidence to the court that indicates a probability that a substitute can be secured or that the continuance will not result in an indefinite delay, the motion may be properly denied. *Varela v. State,* 561 S.W.2d 186, 191 (Tex.Crim.App.1978; *Salinas v. State,* 542 S.W.2d 864 (Tex. Crim.App.1976).

■ In the instant case, appellant informed the trial court that it would take at least "four weeks or more" to find another expert and to adequately prepare for trial. At the hearing on the motion for new trial, appellant's counsel testified that he had made repeated attempts after the trial to locate another qualified expert and was unable to do so. He stated that he was told by the officer who referred him to the first expert that he did not know of anyone else. A private investigator, called as a witness by the defense, testified that it would be difficult to find an expert who was not employed by the Houston Police Department.

In light of all of the above, it is obvious that appellant did not show a probability that a substitute could be secured or that the trial would not be indefinitely delayed; therefore the trial court did not abuse its discretion by first offering appellant a week's delay and, upon his rejection, denying his motions. Neither was appellant deprived of his right to a fair trial under either the Texas or the United States Constitutions. Appellant's first four points of error are overruled.

In his fifth point of error, appellant contends that the trial court erred in sustaining the State's objection to the testimony of appellant's sister-in-law.

Appellant's sister-in-law attempted to testify to the contents of a telephone conversation she had with him immediately after the shooting. The State objected on the grounds that the statements were hearsay. The jury was removed, and the witness was allowed to testify. She stated that appellant told her that he had just shot a man and that the man was coming at him and wanted to kill him. She also testified that appellant was crying and sounded "hysterical" on the phone.

Appellant stated that the purpose of his offer was to show his "state of mind" at the time of the shooting, and not to present the statements as evidence of the truth of the matter asserted. The trial court sustained the State's objection, but allowed the witness to testify in the jury's presence that appellant "was just crying real hard and was just real terrified and hysterical."

■ Appellant argues for the first time on appeal that his statements to his sister-in-law were admissible for the truth of the matters asserted under the "excited utterance" exception to the hearsay rule. Assuming that the exclusion of the statements was error, without so ruling, we conclude that appellant has failed to show harm. The record reflects that a police officer who first arrived on the scene testi-

fied that appellant made the same statements. Upon questioning by the prosecutor as to what appellant said after telling the officer that he had shot the complainant, the officer continued:

Well, as we were conducting the investigation, he went on to say that he had shot him, that the man had come over to talk to him, and he was in fear of his life because the man made—had made the—had mentioned that he was going to kill him.

\* \* \* \* \* \*

Upon cross-examination, appellant's counsel asked, and the officer answered:

[Counsel]: Do you know whether or not the deceased jumped up and said, "I'm going to kill you"?

[Police Officer] That's what the defendant had told me.

Additionally, a tape recording of similar statements by appellant, made to police dispatch personnel moments after his conversation with his sister-in-law, was introduced. Like appellant's statements to the officer on the scene, his taped recording also showed that appellant was extremely upset when he made the statements. Further, appellant himself testified to the same facts. Where the same or similar evidence is elicited from another source, the exclusion of such statements may be harmless. *Womble v. State,* 618 S.W.2d 59, 62 (Tex. Crim.App.1981). Upon examination of the entire record, we conclude that error, if any, in excluding the sister-in-law's testimony of appellant's exact words to her, was harmless beyond a reasonable doubt. Tex.R.App.P. 81(b)(2). Appellant's fifth point of error is overruled.

In his sixth point of error, appellant asserts that the trial court erred on two separate occasions by improperly limiting his attorney's closing argument during the punishment stage.

In the first instance, appellant's attorney argued that the State had not presented any evidence that appellant was a threat to society. The State objected on the grounds that appellant's future danger to society was an appropriate issue in a capital case, but not in the case at bar. The trial court

sustained the objection, but did not instruct the jury to disregard the argument. However, appellant's attorney then repeated the same argument on at least two more occasions, without objection from the State.

■ Because appellant was not prevented from arguing the same facts again, the trial court's error, if any, was harmless beyond a reasonable doubt. Tex.R.App.P. 81(b)(2).

In the second instance, appellant's attorney alluded to the State's failure to call the complainant's wife as a witness during the punishment stage. The State objected on the grounds that the argument was improper because the defense could have called her as a witness and because her testimony had nothing to do with punishment. The trial court sustained the objection. Appellant then told the jury that the evidence showed that the complainant's wife was telling her husband one thing and appellant something else. He suggested to the jury that all the blame should not be put on appellant.

■ The failure to call witnesses is fair comment by either side during the punishment stage. *O'Bryan v. State,* 591 S.W.2d 464, 479 (Tex.Crim.App.1979). Although the purpose of the intended argument is not clear, appellant's attorney succeeded, without objection from the State, in suggesting to the jury that the complainant's wife should shoulder some of the responsibility for the shooting. If there was another purpose, it was incumbent on appellant's attorney to inform the trial court of it. By not doing so, he has failed to demonstrate harm in this instance also. Appellant's sixth point of error is overruled.

In his seventh through fourteenth points of error, appellant contends that the trial court's submission, at the punishment stage, of the jury instructions pertaining to parole eligibility, as required by Tex.Code Crim.P.Ann. art 37.07, sec. 4 (Vernon Supp. 1988), violates the separation of powers doctrines and the due process clauses of the United States and Texas Constitutions.

The Court of Criminal Appeals has held that the "parole charge" is unconstitutional and that it violates the due process provision of the Texas Constitution. *Rose v. State*, No. 193–87 (Tex.Crim.App., Nov. 12, 1987) (not yet reported). However, it found that charging the jury on the parole law is not automatically reversible error. Therefore, we apply the *Almanza* standard of review to determine the degree of harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).

Under *Almanza*, if there was no objection to the court's charge, as in the instant case, then the appellant must show that the error was fundamental, viz., that it was so egregious and created such harm that he did not receive a fair and impartial trial. *Almanza v. State*, 686 S.W.2d at 171.

■ In the instant case, the record reveals that there was no discussion of the parole law during either the voir dire or the argument following the punishment hearing, and appellant has not challenged the sufficiency of the evidence to support his conviction. As to the punishment phase, an examination of the jury charge and the argument of counsel does not reveal anything that would have prevented appellant from receiving a fair and impartial trial. The jury was instructed that the punishment range for voluntary manslaughter was any term of not more than 20 years or less than two years, and a fine not to exceed $10,000. Further, the jury was instructed that appellant was eligible for probation should it assess less than a 10 year sentence. Punishment was assessed at 12 years and a fine of $1,000.

In light of all of the above, we find that appellant did not suffer any egregious harm. Appellant's seventh through fourteenth points of error are overruled.

Finally, the State has filed a motion requesting that this Court reform the judgment of the trial court to include the jury's affirmative finding of the use or exhibition of a deadly weapon during the commission of the offense, in compliance with Tex.Code Crim.P.Ann. art. 42.12, sec. 3g(a)(2) (Vernon Supp.1988).

■ The record reflects that the jury found appellant "guilty of voluntary manslaughter with the use of a firearm," as charged by the court. A firearm is a deadly weapon per se. *Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App.1985); *Stewart v. State*, 532 S.W.2d 349 (Tex.Crim.App. 1976). Thus, as a matter of law, the jury made an affirmative finding that appellant used a deadly weapon during the commission of the offense. *Polk v. State*, 693 S.W.2d at 396.

Article 42.12, sec. 3g(a)(2), requires that upon an affirmative finding that a deadly weapon was used, the court *shall* enter the finding in its judgment. In the instant case, the trial court neglected to enter the finding in the judgment, although it did charge the jury in accordance with article 37.07, section 4(a), as required when there is an affirmative deadly weapon finding.

Because this Court has the power to reform and correct a judgment as the law and nature of the case may require, Tex.R. App.P. 80, we hereby reform the judgment to include therein the following affirmative finding: "By its verdict, the jury made an affirmative finding that the defendant used a deadly weapon during the commission of the offense of voluntary manslaughter."

As reformed, the judgment is affirmed.