COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 RUBEN
 VALENZUELA GARAY,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00336-CR
  
 Appeal from the
  
 205th District Court
  
 of El Paso County, Texas
  
 (TC#20000D03487)
 
 




 

MEMORANDUM
OPINION

A jury found Ruben Valenzuela Garay guilty of recklessly causing serious bodily injury to
a child and causing serious bodily injury to a child by criminal
negligence.  The jury assessed punishment
at twelve years= confinement and a $10,000 fine for recklessly causing
serious bodily injury and two years= confinement for negligently causing
serious bodily injury.  In his sole issue
on appeal, Valenzuela argues that the trial judge erred by denying his motion
for a continuance.  We affirm.[1]








Factual and Procedural Background

Valenzuela was charged with causing
severe brain injuries to his girlfriend=s daughter, Armida,
when she was almost two-years old. 
Approximately six months before trial, the trial judge granted
Valenzuela=s motion for the appointment of a
medical expert to assist in the preparation of his defense.  The judge appointed Dr. Juan Contin, an expert in forensic pathology.  Two or three weeks before trial, the
prosecutor delivered Armida=s medical records to Dr. Contin for him to review.








During jury selection, Valenzuela=s counsel announced that Dr. Contin=s assistant called counsel=s office that morning and stated that
Dr. Contin had not reviewed the medical records and
had decided not to serve as an expert in the case.  Counsel stated that he was Asurprised and shocked@ about Dr. Contin=s decision and that he was concerned
that his representation would be inadequate without the assistance of an
expert.  The trial judge then asked
counsel if he had someone in mind to replace Dr. Contin,
and counsel responded that he did not because A[i]t=s so difficult to get in-town people.@ 
The judge noted that the offense was committed approximately four years
earlier, the case had already been reset a few times, and jury selection had
begun.  Nevertheless, the judge stated
that once jury selection was completed, she would recess court for the day to
give Valenzuela an opportunity to find a substitute for Dr. Contin,
Aand then we will see what you come up
with between today and tomorrow.@ 
She added, AI will give you as much time as you
need within reason. . . . I do not foresee allowing a continuance of the trial,
though.  I mean, I will give you time and
we can delay maybe one day.@

The next morning, defense counsel
stated, AI am pretty much in the same
situation as I was yesterday.@  He made an oral
motion for a three-month continuance because he was Aunable to find a doctor here in town.@ 
Counsel also stated that he would reduce the motion to writing.  The judge denied the oral motion.

After the denial of the continuance,
the State presented its evidence, which included a statement dictated by
Valenzuela.  Valenzuela stated that Armida was injured when she fell from a kitchen table.  A crime scene technician testified that the
distance from the kitchen table to the floor was thirty inches.

The State=s evidence also included testimony
from three expert witnesses.  Dr. Cheetan Moorthy, a specialist in
pediatric radiology, testified that Armida had Aacute blood surrounding the left side
of the brain@ and that A[t]he same side of the brain was
significantly swollen, . . . to the point where it was
pushing the other side of the brain over to the other side.@ 
He opined that the injury to the left side of the brain was caused by a Adirect blow to that side of the head,@ involving a Avery violent impact.@ 
Armida also had swelling and bruising on the
right side of her head, which resulted from a separate impact.  According to Dr. Moorthy,
Armida=s injuries were not consistent with a
fall from a thirty-inch-high table.  He
noted that Armida did not have any other
injuries.   Ordinarily, one would expect
to find defensive or reflexive injuries when a two-year-old child falls because
the child will attempt to break the fall.








Dr. Violetta
Radenovich, a pediatric opthalmologist,
testified that Armida sustained bilateral symmetrical
retinal hemorrhages.  This type of
hemorrhage can result when a child is shaken. 
It would be Avery unusual@ to sustain these hemorrhages in a fall from a height of
thirty-one inches.  Although she could
not state with certainty the mechanism of Armida=s injuries, she believed the injuries
could have resulted from 
hitting Armida against a wall or a Asudden throw@ to the floor.








Dr. Harry Wilson, a pediatric
pathologist, testified that Armida sustained Asome type of impact injury with
acceleration to the left side of the head, along with some other type of more
minor injury to the right forehead.@ 
He stated that the level of force required to cause Armida=s injuries was equivalent to the
force that would occur in a thirty-mile-per-hour or greater car accident in
which an unrestrained child hits her head against an object or the force that
would occur in a fall from a height of between ten feet and three stories.  He testified that Armida=s injuries were not consistent with
an accidental fall from a table because she had two separate sites of
injury--one on the right and one on the left--and because her injuries were too
severe to have resulted from a short fall off of a table.  Wilson suggested that shaking may have played
a role in Armida=s injuries, but he conceded that her
injuries did not fit within the Aclassic@ description of shaken-baby
syndrome.  He believed the most likely
cause of the injuries was that Athis child sustained a significant whack to the left side of
her head, presumably while standing on the table.  And that whack did two things.  It sent her in a tumble fall onto the floor,
and it created near lethal brain injury to the left side of her brain.@

On the next day of trial, defense
counsel presented his written and sworn motion for a continuance to the trial
judge and offered it for purposes of the appellate record.   The motion recited the facts regarding Dr. Contin=s decision not to serve as an expert and stated that
Valenzuela Ais now at a severe disadvantage and
cannot obtain a fair trial.@    The motion
concluded by requesting a continuance to obtain an expert Asecond opinion and to refute Dr.
Wilson=s opinion testimony.@ 
The judge denied the motion, but agreed to make the motion part of the
appellate record.  Valenzuela filed an unsworn motion for new trial, stating, ADefendant was denied his right to an
expert to assist in his defense.@ 


Discussion

Valenzuela argues that the denial of
the continuance deprived him of a fair trial. 
He asserts that because he did not have an expert, he was unable to
cross-examine the State=s expert witnesses or to present expert testimony that Armida=s injuries were accidental.

We review a trial judge=s denial of a motion for continuance
for abuse of discretion.  Vasquez v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). 
To establish an abuse of discretion, the defendant must show that he was
actually prejudiced by the denial of the motion.  Id.








To preserve error in the denial of a
continuance based on the absence of a witness, a defendant must make a showing
as to what the witness=s testimony would have been. 
See Gentry v. State, 770 S.W.2d 780, 787 (Tex. Crim. App. 1988); Lemmons
v. State, 75 S.W.3d 513, 526 (Tex. App.--San Antonio 2002, pet. ref=d); cf. Sturgeon v. State, 106
S.W.3d 81, 82-83 (Tex. Crim. App. 2003) (holding that
error in the trial court=s denial of a writ of attachment for a subpoenaed witness is
preserved if counsel states the witness=s anticipated testimony on the record
in open court).  The defendant may make
this showing by attaching affidavits to the motion for continuance or to a
motion for new trial or by providing testimony at a new trial hearing.  See Gentry, 770 S.W.2d at 787-88; Lemmons, 75 S.W.3d at 526.

Valenzuela=s motion for continuance did not
state what Dr. Contin=s testimony would have been or that
it would have been material and beneficial and to him.  And Valenzuela=s motion for new trial merely
asserted that he was denied an expert to assist in his defense.  Therefore, Valenzuela has not preserved error
in the denial of the continuance.

Even if the issue were preserved, the
trial judge did not err in denying the continuance because Valenzuela=s motion does not comply with the
statutes that govern 
continuance motions.








A motion for continuance must be in
writing and must be sworn to by a person having personal knowledge of the facts
relied on for the continuance.  Tex. Code Crim. Proc. Ann. arts.
29.03, 29.08 (Vernon 1989); Dewberry v. State, 4
S.W.3d 735, 755 (Tex. Crim. App. 1999).  If a continuance is sought because of the
absence of a witness, the motion must state the name and residence of the
witness, the diligence used to procure the witness=s attendance, the material facts
expected to be proved by the witness, that the witness is not absent by the
procurement or consent of the defendant, that the motion is not made for delay,
and that there is no reasonable expectation that attendance of the witness can
be secured during the present term of court. 
Tex. Code Crim. Proc. Ann. art.
29.06; see also id. art. 29.07
(setting forth additional requirements for a subsequent continuance motion).  After a trial has begun, a continuance may be
granted Awhen it is made to appear to the
satisfaction of the court that by some unexpected occurrence since the trial
began, which no reasonable diligence could have anticipated, the applicant is
so taken by surprise that a fair trial cannot be had.@ 
Id. art. 29.13.








Valenzuela did not comply with these
statutory requirements in at least two respects.  First, he did not state, either in his
written motion or in open court, the material facts expected to be proved by
the witness.  See id. art. 29.06.  Because Valenzuela failed to comply
with this requirement, he cannot demonstrate that he was prejudiced by the
denial of the continuance.  See Gentry,
770 S.W.2d at 787 (holding that to show that he was injured by the denial of a
continuance, the defendant must establish that the missing witness=s testimony would have been material
and beneficial to him); Rische v. State,
746 S.W.2d 287, 289 (Tex. App.--Houston [1st Dist.]) (AFor appellant to have been deprived
of his constitutional right to a fair trial, the expert=s proposed testimony must have been
material to his case.@), remanded on other grounds, 755 S.W.2d 477 (Tex. Crim. App. 1988).

Second, the record does not reflect
that Valenzuela acted diligently to secure Dr. Contin=s testimony or that he could not have
anticipated Dr. Contin=s failure to appear by exercising
reasonable diligence.  See Tex. Code Crim. Proc. Ann. arts.
29.06, 29.13. 
There is nothing in the record to suggest that Valenzuela attempted to
subpoena Dr. Contin. 
See Hughes v. State, 962 S.W.2d 89, 90 (Tex. App.--Houston [1st
Dist.] 1997, pet. ref=d) (holding that a defendant failed to exercise diligence
because he did not attempt to subpoena his expert witness until the first day
of trial).  Moreover, according to Valenzuela=s counsel, Dr. Contin
informed counsel on the morning of jury selection that he had not reviewed Armida=s medical records.  If
counsel intended to call Dr. Contin as a witness, he
should have determined before the trial began whether Dr. Contin=s findings were favorable to the
defense.








Furthermore, a trial judge does not
err in denying a continuance if the defendant does not demonstrate that a
substitute witness can be secured or that the continuance will not result in an
indefinite delay.  Rische,
746 S.W.2d at 290. 
Valenzuela did not demonstrate that he would be able to find a
substitute for Dr. Contin.  His counsel=s statements to the court suggested
that finding a substitute would be difficult. 
Although the trial judge indicated she might delay the trial for a day,
counsel sought a three-month continuance to secure a new expert.  He also stated that he could not find a
substitute in town.[2]  Because Valenzuela failed to demonstrate that
a substitute witness could be secured or that the continuance would not result
in an indefinite delay, the trial judge did not err in denying the continuance.

Valenzuela relies on three cases to
establish that the denial of the continuance amounted to a denial of due
process.  In two of the cases, the trial
judge refused to appoint an expert to assist the defense.  See Ake v.
Oklahoma, 470 U.S. 68, 72, 105 S.Ct. 1087,
1090-91, 84 L.Ed.2d 53 (1985); Rey v. State,
897 S.W.2d 333, 335 (Tex. Crim. App. 1995).  Here, the trial judge did appoint an
expert.  Thus, Ake
and Rey are inapposite.  In the third case, the court held that the
trial judge erred by refusing to grant a continuance when the appointed expert
became unavailable.  See
Lighteard v. State, 982 S.W.2d 532, 535 (Tex.
App.--San Antonio 1998, pet. ref=d).  In Lighteard,
the court held that the defense exercised reasonable diligence in attempting to
use the appointed expert.  Id. at 534-35. 
Here, we have concluded that the defense did not exercise reasonable
diligence.  Thus, Lighteard
is distinguishable.








Conclusion

For the reasons stated herein,
Valenzuela=s sole issue is overruled, and the
judgment of the trial court is affirmed.

 

SUSAN
LARSEN, Justice

August 28, 2003

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)

 











[1]We
previously affirmed these convictions, stating that Valenzuela did not file a
sworn, written motion for continuance.  See
Valenzuela Garay v. State, No. 08-01-00336-CR
(Tex. App.--El Paso Dec. 12, 2002) (not designated for publication), 2002 WL
31777632, at *1-2.  The Court of Criminal
Appeals vacated our judgment and remanded the case to us to consider Valenzuela=s issue on appeal.  Valenzuela Garay v. State, No. 262-03 (Tex. Crim.
App. May 7, 2003) (not designated for publication), 2003 WL 21024609, at *1.  





[2]Dr.
Moorthy testified that there was one other pediatric
radiologist in El Paso County.   The
record does not reflect whether Valenzuela tried to contact that radiologist.