Opinion issued August 25, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00242-CR

———————————

Luis Abraham Requeno-Portillo, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 262nd Judicial District Court 

Harris County, Texas



Trial Court Case No. 1206159

 



 

MEMORANDUM OPINION

          A
jury found appellant, Luis Abraham Requeno-Portillo, guilty of the offense of
murder[1] and assessed his punishment
at confinement for ninety-nine years.  In
two issues, appellant contends that trial court erred in limiting his
cross-examination of a witness and denying him the right to counsel by limiting
his closing argument.  

          We
affirm.

Background

          Houston
Police Department (“HPD”) Officer L. Verbitskey testified that on February 9,
2009, he was dispatched to a lot in the 800 block of Rush Creek
to assist in the investigation of the murder of the complainant, Noe Fuenes.  Upon his arrival, Verbitskey found several
items “scattered about” the complainant’s body, including a bottle of “Liquid
Nails,” a bottle of Lysol, some knotted fabric with a “suspicious red stain,”
and a knife.  He then bagged the items
from the scene and sent them to a laboratory for processing. 

          HPD
Homicide Sergeant J.C. Padilla testified that he began the investigation of the
complainant’s death by first speaking with the complainant’s uncle, Fredesunido
Osorio, and he was able to identify three suspects: Mercedes Antonio Menjivar,
Pedro Ronaldo Menjivar-Orellana, and appellant. 
According to Osorio, on February 8, 2009, he and the complainant had
been eating dinner at a restaurant when the complainant met a man with whom he
left the restaurant.  Although the
complainant left his money and car keys with Osorio, he did not return to the
restaurant.            

          Jose
Martinez testified that he had known appellant, Menjivar, and Menjivar-Orellana
from when they had grown up in the same neighborhood in El Salvador.  On the night of February 8, 2009, he was at a
party at his mother’s house with several people, including appellant and
Menjivar-Orellana, who left the party in a white van between 8:30 and 9:00
p.m.  Before they left, Menjivar-Orellana
received a telephone call from Menjivar, and both appellant and Menjivar-Orellana,
who had a bandage on his hand, returned to the party about one hour after they
had left.  Martinez further testified
that Menjivar-Orellana told him that he, appellant, and Menjivar had stabbed a
young man with a knife because he belonged to another gang and appellant had
cut Menjivar-Orellana while he was holding the man down.  Martinez
also stated that appellant admitted to him that they had stabbed a man.   

Jose Orellana testified that he had
known appellant from when they grew up in El Salvador and Menjivar and
Menjivar-Orellana are his cousins.  On
February 8, 2009, he was at a friend’s house “hanging out” with several people
including appellant and Menjivar-Orellana. 
Appellant and Menjivar-Orellana left the house around 7:00 p.m., and
Menjivar-Orellana returned approximately thirty to forty-five minutes later
wearing different clothes and with a bandage on his head.  Orellana explained that he had owned a white
van, but he gave it to Menjivar “for a payment that [he] owed him.”  The next day, Orellana saw appellant and
Menjivar-Orellana washing the van, but Menjivar was not present.  Orellana noted that he had spoken with
Menjivar, who told Orellana about his having encountered the complainant at the
restaurant on the night of the complainant’s death.  Menjivar said that the complainant had
referred to Menjivar as “Salvatrucha,” in reference to an El Salvadorian gang
known as “MS 13.”  MS 13 is a “rival”
gang of the “18th Mara,” of which appellant was a member.   

When appellant attempted to
cross-examine Orellana about the van that he had given to Menjivar as a
payment, he requested to take Orellana on voir-dire to avoid violating the
State’s previously filed motion in limine. 
On voir-dire, the following exchange took place:

[Appellant’s
Counsel]:            Now, Mr. Orellana, you testified when [the State] was
asking you questions that the van you had you gave over to [Menjivar]; is that
correct?

 

[Orellana]:                               Yes.

 

[Appellant’s
Counsel]:            And you said it’s because you owed him some money; is that
correct?

 

[Orellana]:                               Correct.

 

[Appellant’s Counsel]:            How
much money did you owe him?

 

[Orellana]:                               About $4,500.

 

[Appellant’s
Counsel]:            And why did you owe [Menjivar] $4,500?

 

[Orellana]:
                              Because he’s
the one that brought me over from El Salvador.  

 

[Appellant’s
Counsel]:            And I take that to mean that you were brought over by some
people who [Menjivar] paid money for them to bring you from your country to the
United States?

 

[Orellana]:                               Correct.

 

[Appellant’s
Counsel]:            Now, currently then, I’m assuming, did you ever pay him the
$4,500 back?

 

[Orellana]:                               No. I still owe
them.

 

[Appellant’s
Counsel]:            Approximately how much do you owe him?

 

[Orellana]:
                              $4,500
because he gave me the van back.

 

[Appellant’s
Counsel]:            Now, and that’s
basically what I wanted to cover your honor.

 

[Trial Court]:                           What’s
the materiality?

 

[Appellant’s
Counsel]:            Well, the
materiality, your honor, is that now that he basically said that so and so was
a partner in a crime and he’s going to the penitentiary, obviously he doesn’t
have to pay back the $4,500.

 

[The
State]:                              . . .
. this is against [Menjivar].  He owes
[Menjivar] money. . . . Judge, that has no relevance at all in this trial at
hand. . . .  But I would say this
testimony is not relevant.  Judge, it’s
also blatant 403 by [appellant’s counsel] insinuating he is an illegal
immigrant and brought here illegally.

 

[Trial
Court]:                           Court’s
not going to permit it. Bring the jury.

 

The trial court then refused to allow this testimony
in front of the jury.  

          HPD
Criminalist P. Ancira testified that she tested the items retrieved from the
crime scene that had previously tested positive for blood to see if she could
retrieve any DNA from the items.  She
used buccal swabs from Menjivar-Orellana, Menjivar, and appellant and a
“bloodstain card” from the complainant to analyze the evidence retrieved from
the crime scene.  Ancira excluded
appellant as a “possible contributor of the DNA” found on the knife, under the
complainant’s fingernails, on the interior of the van, and on the Lysol
bottle.  However, Menjivar could not be
excluded as a possible contributor of the DNA found at the scene.

Cross-Examination

          In
his first issue, appellant argues that the trial court erred in limiting his
cross-examination of Orellana because he had a “motive and incentive to
lie.”  He asserts that the trial court “precluded”
him from establishing the bias of Orellana, which was revealed by the fact that
Orellana owed Menjivar $4,500.  Appellant
asserts that this provided Orellana with a motive to testify against appellant
and his friends and the trial court, in not allowing him to question Orellana
on this subject, violated Texas Rule of Evidence 613(b), which permits a party
to examine witnesses regarding bias and prejudice, and his Sixth Amendment
right to confront the witnesses against him. 


A trial court has the
discretion to decide the admissibility of evidence, and, absent an abuse of that
discretion, its rulings will not be overturned.  Moses v. State, 105 S.W.3d
622, 627 (Tex. Crim. App. 2003).  To determine whether a trial court has abused
its discretion, we consider “whether the [trial] court acted without reference
to [the pertinent] guiding rules and principles; that is, whether the court
acted arbitrarily or unreasonably.”  Fox v. State, 115 S.W.3d
550, 558 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).

Through the
Confrontation Clause of the Sixth Amendment, an accused enjoys the right “to be
confronted with the witnesses against him” by an opportunity to cross-examine
the witnesses.  U.S. Const. amends. VI, XIV; Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431,
1435 (1986); see Lopez v. State, 18 S.W.3d
220, 222 (Tex. Crim. App. 2000).  The right to cross-examine witnesses requires
that an accused be given wide latitude to explore a witness’s story, test his
perceptions and memory, and impeach his credibility, including any fact that
would tend to establish his “‘ill feeling, bias, motive, and animus’” against
the accused.  Parker v. State, 657 S.W.2d
137, 139 (Tex. Crim. App. 1983) (quoting Simmons v. State, 548 S.W.2d
386, 388 (Tex. Crim. App. 1977)).  Rule 613(b) further recognizes the right of
litigants to cross-examine witnesses on the issues of bias and prejudice. 

However, a trial
court retains wide discretion to impose reasonable limits on cross-examination
based on concerns such as harassment, prejudice, confusion of the issues, the
witness’s safety, or interrogation that is repetitive or only marginally
relevant.  Van Arsdall, 475 U.S. at
679, 106 S. Ct. at 1435; Lopez, 18 S.W.3d at 222.
 And a defendant’s right to cross-examine
witnesses must be balanced against the probative value of the evidence.  Lopez, 18 S.W.3d at 222.
 “[T]he Confrontation Clause guarantees
an opportunity for effective cross-examination, not cross-examination
that is effective in whatever way, and to whatever extent, the defense might
wish.”  Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292, 294
(1985); Walker v. State, 300 S.W.3d 836, 844–45 (Tex. App.—Fort Worth
2009, pet. ref’d).  When a defendant
complains about the denial of the opportunity to cross-examine a witness generally
about matters concerning the witness’s credibility, he, to preserve error, need
not show what his cross-examination would have revealed, but only the general
subject matter about which he desired to examine the witness and, if
challenged, show on the record why such testimony should be admitted into
evidence.  Virts v. State, 739 S.W.2d
25, 29 (Tex. Crim. App. 1987).

          The State called Orellana to testify
that he saw appellant clean the interior of a white van the day after the
murder.  During his cross-examination of
Orellana, appellant, outside the presence of the jury, took him on voir dire
and elicited testimony that he owed Menjivar $4,500 for helping him to illegally
enter the United States from
El Salvador.  Orellana explained that he originally gave Menjivar
the van as partial payment, but Menjivar gave the van back to him and he still
owed Menjivar the full $4,500.  When the
trial court asked appellant’s counsel about the relevance of his line of
questioning, counsel stated, “Well, the materiality, Your Honor, is that now
that he basically said that [Menjivar] was a partner in a crime and he’s going
to the penitentiary, obviously he doesn’t have to pay back the $4,500.”  The State argued that the testimony was not
relevant because Orellana owed the debt to Menjivar, not appellant.  The State further argued that the testimony
would be more prejudicial than probative because it “insinuate[es]” that
Orellana is an illegal immigrant.  See Tex.
R. Evid. 403.


Although great
latitude should be allowed in cross-examining witnesses to reveal possible
bias, prejudice, or self-interested motives to falsify testimony, the
cross-examiner bears the burden of demonstrating the relevance of the proffered
evidence to the issue of bias or prejudice. 
Chambers v. State,
866 S.W.2d 9, 26–27 (Tex. Crim. App. 1993). 
Evidence is relevant if it has “any tendency to make the existence of
any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.”  Tex.
R. Evid. 401.  In order to
demonstrate that proffered testimony is relevant to the issue of bias or
prejudice, one must establish a specific connection between a witness’s
testimony and an actual bias or interest. 
See Crenshaw v. State, 125 S.W.3d 651, 654 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d); Ellis v. State,
99 S.W.3d 783, 789 (Tex. App.—Houston [1st
Dist.] 2003, pet. ref’d) (proffered testimony not relevant to determine fact at
issue).

Here, appellant
argues that the “credibility” of Orellana “could have been severely questioned
if the jury were to hear his possible motive or bias for the testimony he
gave.”  However, appellant has failed to show the relevance of
the excluded testimony to the issue of bias or the merits of the case.  Based on the record presented, the line of
cross-examination sought by appellant did not demonstrate any bias or prejudice
by Orellana against appellant.  The
testimony elicited concerned a debt owed not to appellant, but to Menjivar, a
co-defendant who had already pleaded guilty to the offense of murder.  Even if the testimony was somehow marginally
relevant, the trial court retained wide discretion to impose a limit on the
cross-examination.  See Van Arsdall, 475 U.S. at
679, 106 S. Ct. at 1435; Lopez, 18 S.W.3d at 222.  Accordingly, we hold that the trial court did
not violate rule 613(b) or appellant’s Sixth Amendment right to confront witnesses
in limiting appellant’s cross-examination of Orellana.  

We overrule
appellant’s first issue.   

Jury Argument 

In his second issue, appellant argues that the trial court
erred in restricting his jury argument by sustaining the State’s objection to a
portion of his closing argument because it denied him the right to
counsel.  

The following exchange took place during appellant’s closing
argument:

[Appellant]:          Keep in mind, ladies and gentlemen, you
can’t convict on just an assumption. 
It’s got to be proof beyond a reasonable doubt.  And that proof has to go through testimony
that you’re going to believe that’s credible, evidence like DNA.

 

 [The State]:         Judge,
I’m going to object.  That’s a
misstatement of the law.

 

[The Court]:         Be sustained.

 

Appellant
argues that because the statement is “clearly non-objectionable” and the trial court
sustained the State’s objection, he was “denied the right to present his
defense in closing argument.”  

A trial court has broad discretion in controlling the scope
of closing argument, but it may not prevent defense counsel from making a point
essential to the defense.  Lemos v. State, 130 S.W.3d 888, 892
(Tex. App.—El Paso 2004, no pet.).  A defendant
has the legal right to argue any theory supported by the evidence.  Brown
v. State, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997); Lemos, 130 S.W.3d at 892. 
Prohibiting counsel from making a particular jury argument constitutes a
denial of the defendant’s right to counsel when that argument is one the
defendant is entitled to make.  McGee v. State, 774 S.W.2d 229, 238
(Tex. Crim. App. 1989), cert. denied,
494 U.S. 1060, 110 S. Ct. 1535 (1990); Lemos,
130 S.W.3d at 892.  However, only when a
trial court restricts defense counsel from doing something it had the legal
right to do is it considered a deprivation of the right to counsel.  Jackson
v. State, 992 S.W.2d 469, 476 (Tex. Crim. App. 1999); Lemos, 130 S.W.3d at 892.

Assuming without
deciding that the trial court erred in sustaining the State’s objection, we
must determine whether the error was harmful.  See Tex. R. App. P. 44.2.  The Texas Court of Criminal Appeals has held that an improper
denial of a jury argument can constitute a denial of the right to counsel.  Johnson
v. State, 698 S.W.2d 154, 166 (Tex. Crim. App. 1985) (citing Riles v. State, 595 S.W.2d 858, 861
(Tex. Crim. App. 1980)).  Denial of the
right to counsel is an error of constitutional magnitude.  U.S. Const. amend. VI; Tex. Const. art. I, § 10.  A defendant’s constitutional rights to
counsel and to a jury trial encompass the right to have his theory of the case
argued vigorously to the jury.  Lemos, 130 S.W.3d at 892–93; see also United States v. DeLoach, 504
F.2d 185, 190 (D.C. Cir. 1974) (holding restrictions on defendant’s closing
argument violated constitutional right to counsel).

Because any such error would be constitutional, we determine
whether the trial court’s sustaining of the State’s objection was harmless
beyond a reasonable doubt.  Tex.
R. App. P.
44.2(a); see also Williams v. State,
958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  In applying
the “harmless error” test, the primary question is whether there is a
“reasonable possibility” that the error might have contributed to the
conviction.  Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).  

Our harmless error analysis should not focus on the propriety
of the outcome of the trial; instead, we should calculate as much as possible
the probable impact on the jury in light of the existence of other
evidence.  Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).  We consider the source and nature of the
error, the extent that it was emphasized by the State, its probable collateral
implications, the weight a juror would probably place on the error, and whether
declaring it harmless would be likely to encourage the State to repeat it with
impunity.  Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).  This requires us to evaluate the entire
record in a neutral, impartial, and even-handed manner, not “in the light most
favorable to the prosecution.”  Id. at 586.

Here, in concluding that there is no harm, we note that the
State’s objection was not made until after appellant’s counsel had made his
argument that appellant’s DNA was not recovered at the crime scene.[2]  See
Wiltz v. State, 827 S.W.2d 372, 374 (Tex. App.—Houston [1st Dist.] 1992)
(holding error in sustaining objection to defense counsel’s argument harmless
when counsel had already made argument to jury and trial court did not instruct
jury to disregard),  rev’d on other grounds, 863 S.W.2d 463 (Tex. Crim. App. 1993).  Additionally, appellant was able to make essentially
the same argument numerous times in his closing argument without objection.  Accordingly, after carefully reviewing the
record and performing the required harm analysis under rule 44.2(a), we conclude
that the trial court’s having sustained the State’s objection did not
contribute to appellant’s conviction or punishment.  See
Tex. R. App. P. 44.2(a).  Because counsel was
not prevented from making essentially the same argument elsewhere, any error in
sustaining the objection was harmless.  See
Johnson v. State, No. 05-96-00811-CR, 1998 WL 245872 (Tex. App.—Dallas, May
18, 1998, pet. ref’d); James
v. State, 660 S.W.2d
146, 148 (Tex. App.—Amarillo 1983, no pet.) (not designated for publication); see
also Rische v. State, 746
S.W.2d 287, 291 (Tex. App.—Houston
[1st Dist.] 1988), remanded on other grounds, 755 S.W.2d 477 (Tex. Crim. App. 1988). 

We overrule appellant’s second issue.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).

 

 











[1]           See
Tex. Penal Code Ann. § 19.02
(Vernon Supp. 2010).  





[2]        Appellant, in his closing argument, also
stated:

 

Then the analyst comes in and they check
blood. They check for blood on the knife they found, on the Lysol bottle, on
the interior of the van.  And those
questions I had, very few questions of the analyst.  Did any of that DNA that was found, on the
knife, on the panels, on the Lysol bottle, did any of it ever match up to [appellant]?  And she said, no, none, none.

 

. . . .

 

There was stabbing going on, and someone gets
cut, there’s going to be something.  They
find DNA on sweat.  Just like the doctor
said.  The analyst, they go in there and
they did a thorough investigation, of the inside of that van.  Not one single trace of evidence against [appellant].