**Affirmed; Opinion Filed January 7, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01067-CR

### BRANDON DEMON JORDAN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F-1775751-I**

## MEMORANDUM OPINION

Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Schenck

Brandon Demon Jordan appeals his conviction for capital murder. In three issues, appellant contends the evidence is legally insufficient to support his conviction and the trial court violated appellant's right to confront his accuser and right to counsel. We affirm the judgment. Because all issues are settled in the law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

Alejandro Hernandez was shot inside a motel room. He fled from the room and died of his injury shortly thereafter. Appellant was arrested and charged with capital murder for killing Hernandez in the course of robbing him. Appellant pleaded not guilty and claimed he acted in self-defense. A jury found him guilty, and the trial court imposed a mandatory life sentence. TEX. PENAL CODE ANN. § 12.31(a).

DISCUSSION

## I. Sufficiency of the Evidence

In his first issue, appellant urges the evidence is legally insufficient to support his conviction because there is no evidence he robbed or attempted to rob Hernandez and the evidence established he acted in self-defense.

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard gives full play to the factfinder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from it. *Id.*; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). The factfinder is not required to believe defensive evidence even if it is uncontroverted. *See Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the credibility of the evidence and substitute our judgment for that of the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

A person commits murder if he intentionally causes the death of an individual. *See* PENAL

§ 19.02(b)(1). The offense is raised to capital murder if, among other things, the murder is committed in the course of committing or attempting to commit a robbery. *See id.* §19.03(a)(2). "In the course of committing" means conduct occurring in an attempt to commit, during the commission of, or in the immediate flight after the attempt or commission of, the offense. *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). The State must prove a nexus between the murder and the theft—that the murder occurred to facilitate the taking of property. *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986).

The evidence presented at trial established the following. On May 21, 2017, Dallas Police Officer Patrick Jobe responded to a report of a shooting at a motel. When he arrived at the scene, Dallas Fire-Rescue directed him to the manager's office. There, he found Hernandez's body. Officer Jobe then proceeded to room 608. There he discovered blood, a shell casing, and a bullet. After viewing surveillance video, Officer Jobe determined that the individuals occupying room 412 were involved in the offense. Room 412 was registered in appellant's name and occupied by appellant and a woman named Brittany Pollard, a known prostitute. Rent for the room was $50 per day and due by 11:00 a.m. each day.

While sitting in his squad car, Officer Jobe observed Pollard walking in the parking lot. He detained her as she walked to room 412. Pollard was arrested on an outstanding warrant and, while being transported to the police station, she attempted to assist the officers in locating appellant. With the assistance of the U.S. Marshals Task Force, appellant was located and arrested the next day.

Surveillance video showed Hernandez and Pollard walking to room 608 at 7:42 a.m. and appellant leaving room 412 and walking to room 608 at approximately 7:47 a.m. on May 21, 2017. Appellant knocked on the door of room 608 and then entered the room. Shortly thereafter, at 7:50 a.m., three people are seen running out of the room. Hernandez ran down a stairway, through the

–3–

parking lot to the manager's office, where he collapsed and later died. Pollard ran in the same direction as Hernandez, while appellant ran in the opposite direction. Appellant and Pollard ultimately returned to room 412 where they remained for approximately ten minutes before leaving in different directions. The murder weapon was recovered from room 412.

Detective Jeff Loeb interviewed Pollard and later obtained search warrants for her and appellant's cell phones, as well as arrest warrants for appellant and Pollard for the offense of capital murder. The cell phones contained text messages between Pollard and appellant on May 20, 2017, in which appellant asks Pollard "Where you at" to which Pollard responded "Still walking babe..I'm tired..The [explicative] is far..plus I still gotta get the RM $. I'm coming tho luv." Appellant responded "Ok be safe." In addition, the cell phones contained a text message from Pollard to appellant at approximately 7:49 a.m. on May 21, 2017 that said: "I'm in room 608 with a Mexican. Come knock and rob his ass. Hurry." The text message was sent just prior to the offense. Detective Loeb believed Hernandez was killed during the course of appellant and Pollard attempting to commit robbery.

The medical examiner determined the cause of Hernandez's death was a gunshot wound to the chest and the manner of death was homicide. The medical examiner determined the gun was fired at close range. Hernandez also had a graze gunshot wound on the left side of his trunk. The medical examiner found a key ring with four keys, a metal clip, a bottle opener, a folding multi-tool with box cutter, eleven quarters, three dimes, two nickels, and eleven pennies in Hernandez's pants pocket. The medical examiner testified that the multi-tool box cutter could be a deadly weapon. Detective Loeb was not aware that Hernandez had the box cutter until the autopsy was performed, which occurred after he interviewed appellant and Pollard. He retrieved the multi-tool box cutter from the medical examiner. It was closed when he retrieved it.

Appellant testified he had previously been convicted of aggravated robbery and burglary

–4–

of a habitation. He had been staying at the motel, in room 412, for several weeks at the time of the murder. On May 21, 2017, appellant had $43 for the rent and planned to borrow $4 from a friend. Pollard woke up around 7:00 a.m. that day and told appellant she was going to get money for the rent. Appellant claimed he did not know how she was going to get the money. Appellant admitted he received a text message from Pollard that morning but claimed he was half asleep when he read it and only noticed that the text said she was in room 608 and that he should hurry. Appellant got up and put a gun in his pocket. He claimed he grabbed the gun because, in the past, Pollard had been injured by a client and he thought she might be in trouble. When appellant entered room 608, Pollard was standing to the left, and Hernandez to the right. Appellant claimed the gun was still in his pocket when he entered the room. Pollard closed the door and told appellant that Hernandez would not pay her for her services, although she had money in her hand.[1]

Appellant claimed Hernandez then placed his hand in his pocket and pulled out a knife, after which appellant pulled the gun, cocked it, and told Hernandez to get back. Appellant stated Hernandez was waving the knife around and rushed him, forcing him to fire his gun in self-defense. Hernandez fell to the floor. Pollard tried to get the money from Hernandez, and appellant claimed he told her to leave him alone and that they needed to get out of there. Appellant then stated Hernandez was still swinging the knife and got up and charged at him so he fired again. They ran from the room, and appellant did not know that Hernandez was injured so seriously that he would die. Appellant claimed he did not intend to kill Hernandez, that his intention in shooting him was merely to protect himself and Pollard. Appellant denied pulling out the gun to demand money from Hernandez.

The factfinder is not required to believe defensive evidence even if it is uncontroverted. *See Mattias*, 731 S.W.2d at 940. The jury could have reasonably concluded that appellant and

---

[1] Police recovered Hernandez's wallet which had $2,276 in various denominations.

–5–

Pollard intended to rob Hernandez in order to obtain rent money to pay their daily rent and in the course of attempting to rob Hernandez, appellant shot and killed him. The text message from Pollard to appellant instructing him to come to room 608 to rob the man she was with coupled with appellant's immediate act of walking to the room with a firearm is sufficient to establish appellant was committing or attempting to commit robbery when Hernandez was murdered. The State is not required to show an actual appropriation of property before a jury is entitled to conclude that the murder took place "in the course of" the robbery. *Castillo v. State*, 221 S.W.3d 689, 693–94 (Tex. Crim. App. 2007) (concluding existence of money and jewelry left behind in victim's possession does not negate that murder was in course of robbery).

As to appellant's contention that he shot Hernandez in self-defense, the jury was free to accept or reject his testimony in this regard. *Obigbo v. State*, 6 S.W.3d 299, 304 (Tex. App.—Dallas 1999, no pet.). A determination of guilt by the factfinder implies a finding against the defensive theory. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). While appellant claimed the jury should have concluded that Hernandez pulled the "knife" before he pulled the gun and fired, urging Hernandez would not have pulled a knife to defend against a gun, the jury was free to reject that argument and to conclude, because the box cutter was still in Hernandez's pocket when the autopsy was performed, Hernandez did not display the box cutter during the altercation.

We overrule appellant's first issue.

## II.    Cross-Examination of Detective Loeb

In his second issue, appellant contends the trial court violated his right to cross-examine State's witness Detective Loeb when the court sustained the State's hearsay objection to appellant's questioning Detective Loeb as to whether he told appellant and Pollard during their

custodial interviews that no knife was recovered.[2]  In ruling on the State's objection, the court indicated that it was not saying appellant could not question Detective Loeb on what he believed when he was questioning appellant and Pollard and appellant elicited that testimony from Detective Loeb on cross-examination.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST., amend. VI.  This right is made applicable to the states by the Fourteenth Amendment.  *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).  Cross-examination provides the defendant an opportunity to test the believability of a witness and the truth of his testimony.  *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  Although the constitutional provision guarantees criminal defendants the right to confront and cross-examine witnesses, this right is not absolute.  *See Porter v. State*, 578 S.W.2d 742, 745 (Tex. Crim. App. 1979).  The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence.  *Henley v. State*, 493 S.W.3d 77, 95 (Tex. Crim. App. 2016).

We review a trial court's decision to limit a defendant's cross-examination under an abuse of discretion standard.  *Matchett v. State*, 941 S.W.2d 922, 940 (Tex. Crim. App. 1996), *cert. denied,* 521 U.S. 2487 (1997).  We will reverse the court's ruling when the court acts arbitrarily and unreasonably, without reference to guiding rules or principles of law, and appellant has been harmed.  *Love v. State*, 861 S.W.2d 899, 901–904 (Tex. Crim. App. 1993).

We need not decide whether the trial court abused its discretion by sustaining the State's

---

[2] The trial court sustained the State's objection to the following question "Now, it would be fair to say that during the course of your conversations with Ms. Pollard and Mr. Jordan, sitting over here next to me, that you told them that nobody ever recovered-."  Defense counsel made a proffer of his question and response as follows "And what I would like to ask the detective is, did you tell Ms. Pollard in her interview and her initial interview that no knife was recovered, that the complaining witness did not have any kind of knife.  I'm going to ask that question, did you ask Brandon Jordan, did you tell him that no knife was recovered from the complaining witness, complaining witness didn't have a knife," to which Detective Loeb responded "Yes.  I remember stating those things."

objection to the question posited by appellant's counsel because, even assuming the trial court did so, the record does not show that any error affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(a). Appellant claims that in attempting to question Detective Loeb about his statements to appellant and Pollard during their interviews, he sought to establish the detective did not have full knowledge of all the evidence recovered at the scene and was not aware that the decedent was in possession of a knife at the time of the alleged offense. But appellant was able to elicit essentially the same information on further cross-examination of Detective Loeb by questioning him about whether, at the time he questioned appellant and Pollard, he believed Hernandez possessed a knife.[3] In addition, Detective Loeb admitted he discovered the existence of the box cutter only after the autopsy was performed. Consequently, we conclude, if the trial court abused its discretion in sustaining the State's hearsay objection, any error was harmless. *See Celis v. State*, 369 S.W.3d 691, 697 (Tex. App.—Fort Worth 2012, pet. ref'd), *abrogated in part on other grounds by Meadows v. State*, 455 S.W.3d 166 (Tex. Crim. App. 2015) (no harm under constitutional-error standard of review by exclusion of witness's DWI history when other evidence of witness's DWI history and drinking problem was presented to jury). We therefore overrule appellant's second issue.

### III.   Closing Argument

In his third issue, appellant contends he was denied his constitutional right to counsel when the trial court sustained the State's objection to his closing argument.

A trial court's ruling on the State's objection to a defendant's jury argument is reviewed for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper jury argument typically falls within one of four general areas: (1) summation of the evidence; (2)

---

[3] Appellant's counsel asked: "At the time that you had questioned Brittany Pollard and at the time you had questioned Brandon Jordan you did not believe at that time that the complaining witness, Mr. Hernandez, had used or even possessed a knife during the course of whatever took place in the room." Detective Loeb responded: "That is correct."

reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

During closing arguments, the following exchange occurred:

Mr. King (Defense Counsel): You know, they told you they had those recorded conversations. Ms. Smith [prosecutor] sat there and said, we've got these recorded conversations. You know how you do that? You play it back, you ask him a question: You just listened to that recorded conversation. Now do you recall saying this? Yes, I did; no, I don't. He says no, I don't, they get to introduce it into evidence. It didn't come in.

The video that they've got not coming in. When he gets arrested and Brittany Pollard gets arrested, they both go in there and they both tell the detective what happened in that room. And it's not like Mr. Colston [prosecutor] said—"

Mr. Colston: Well, Your Honor—

Mr. King: about a bunch of money—

Mr. Colston: I'm going to object to what's on the recordings that that is facts not in evidence.

The Court: Mr. King.

Mr. King: Who has the—

The Court: Mr. King?

Mr. King: Yes, ma'am.

The Court: Response?

Mr. King: Your Honor, it's a reasonable deduction from what he's saying it's response to our argument.

The Court. All right, I'm going to sustain the objection.

The trial court then instructed the jury to disregard the statement.

The improper denial of a jury argument may constitute a denial of the right to counsel, a constitutional error, if the jury argument is one the defendant was entitled to make. *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010) (citing *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989)). However, the trial court does not abuse its discretion in sustaining an objection

–9–

to an argument that is not supported by the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

Appellant contends that his counsel's argument was designed to question the police investigation and demonstrate appellant's credibility. While the objected-to statement is not a model of clarity, it appears appellant was attempting to reference the content of the videos of Detective Loeb's interviews of appellant and Pollard, items that were not admitted into evidence. Accordingly, the trial court did not abuse its discretion in sustaining the State's objection to the statement. *See id.*

Moreover, to the extent appellant wished to argue that the police investigation was inadequate in some way, or that appellant had claimed self-defense since he was first arrested, he did so. During closing argument, appellant's counsel pointed out that Detective Loeb did not go to the scene of the offense and instead relied on second-hand information. He further stated Detective Loeb did not believe appellant's claim of self-defense during his custodial interview because, at that time, Detective Loeb was unaware that Hernandez possessed a knife. Consequently, if the trial court abused its discretion in sustaining the State's objection to counsel's statement, the error was harmless. *See Johnson v. State*, No. 05-96-00811-CR, 1998 WL 245872, at *3 (Tex. App.—Dallas May 18, 1998, pet. ref'd) (not designated for publication) (citing *James v. State*, 660 S.W.2d 146, 148 (Tex. App.—Amarillo 1983, no pet.); (*Rische v. State*, 746 S.W.2d 287, 291 (Tex. App.—Houston [1st Dist.]), *remanded on other grounds*, 755 S.W.2d 477 (Tex. Crim. App. 1988)).

We overrule appellant's third issue.

**CONCLUSION**

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
181067F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRANDON DEMON JORDAN, Appellant

No. 05-18-01067-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F-1775751-I.
Opinion delivered by Justice Schenck.
Justices Myers and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of January, 2020.