**Phillip David PACE, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–09–00182–CR.**

Court of Appeals of Texas, Beaumont.

Submitted April 14, 2010.

Decided Aug. 4, 2010.

**528**

William E. Harrison, LaBella & Associates, PLLC, Conroe, for appellant.

Brett W. Ligon, Dist. Atty., Jeredith Jones, Michael C. Young, Asst. Dist. Attys., Conroe, for state.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Phillip David Pace, Jr. pled guilty to possession of marijuana. The trial court adjudicated his guilt, sentenced him to 180 days in jail, suspended the imposition of the sentence, and placed him on community supervision for one year. Pace appeals from the trial court's denial of his motion to suppress. Pace contends the consent given by his mother to enter the residence was invalid; the officer exceeded the scope of any consent given; Pace did not consent to entry into his bedroom; and the officer did not have probable cause to search Pace's bedroom. The record supports the trial court's finding that the officer had a reasonable, articulable suspicion of danger, and he acted properly to secure his own safety. At that point, the evidence was in plain view. We conclude the trial court did not err in denying the motion to suppress.

### STANDARD OF REVIEW

■ Three witnesses testified at the hearing on the motion to suppress: Officer Bryan Clack, Phillip Pace (the defendant), and defendant's mother Leesa Pace. We review the trial court's decision on a motion to suppress under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App.2010). When the trial court makes express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports the factual findings. *Id.* We review *de novo* the trial court's application of the law of search and seizure to the facts. *Id.*

### OFFICER CLACK'S TESTIMONY

Officer Clack received a call from dispatch to go to a residence "for a welfare

check[,]" because there were "children in the home possibly in danger." He knew that Leesa Pace was leasing the residence, and that appellant was living in the house with her. Clack testified that a welfare check includes a check for possible dangers such as drugs, electrical hazards and lack of cleanliness. The concern at this residence was drugs, specifically marijuana. A three-month-old child was visiting at the home for the weekend. Clack testified the police "had been informed that [appellant] was using marijuana at that location on other occasions[,]" but officers had not found any there in the past.

When Clack arrived at the residence, he found no child there. Clack discovered that Ms. Pace would be returning soon with the child. Appellant answered Clack's knock on the door and explained his mother was not at home. The officer testified he did not ask appellant for permission to search the house. Clack spoke by phone with Ms. Pace, with whom he had contact in the past. Clack explained to Ms. Pace that "there was a welfare check on the safety of her grandchild." Ms. Pace told Clack she had her daughter and granddaughter with her, and they were returning to the house.

Clack informed appellant, who was standing in the doorway, that "his mother had given [Clack] consent to check the house to see if there was any danger to the children." Clack testified appellant said he wanted to put on a pair of boxers, although he was wearing a pair of shorts. Clack testified appellant then "grabbed the door and tried to slam it, and I noticed that he was running away from me and towards his bedroom." Clack's foot was in the doorway, and the door did not shut. Clack testified he did not enter the house until appellant "evaded me and tried to run into his bedroom."

Concerned that appellant might be going to get a weapon or to destroy evidence, Clack testified "[f]or my safety, I followed him." The officer followed appellant down the hallway and observed him go into his bedroom. The officer believed he did not need permission to enter the bedroom, because he was concerned for his own safety. Clack went into the room and observed appellant attempting "to dispose of the marijuana" that was in plain view.

LEESA PACE

Ms. Pace testified she received a call from Officer Clack, who had helped her with a prior case. Clack told her he was talking to appellant at the front door of her house. Ms. Pace testified Clack asked her if he could enter the house to see if it was suitable for the baby, and she said, "sure." She explained she gave consent to the officer's check on the cleanliness of the house and for the presence of food in the house, but did not give Clack consent to go into appellant's room. She explained there is a lock on appellant's bedroom door, and she normally knocks when she enters his room.

PHILLIP PACE

Appellant testified that he opened the front door after the officer knocked. The officer told appellant a welfare check needed to be done. Appellant explained the house was not his, and he told the officer he could not search it. Officer Clack then made a cell phone call out of appellant's hearing. The officer told appellant that Ms. Pace had consented to the check of the house.

Appellant testified he tried to shut the door, because he wanted to put boxers on underneath his baggy shorts. Appellant walked to his room. He testified he did not consent to the officer's entry into the house or into his room. He explained the

door to his room has a lock, and his mother knocks when she wants to enter. He also stated his mother does not allow smoking of any type in the house. Appellant testified he had "weed right behind the picture . . . on [his] entertainment center"; he takes the marijuana pipes outside to smoke. Appellant testified the officer was lying when he said appellant was running to his room.

### WARRANTLESS SEARCH OF A RESIDENCE

■ Appellant argues Officer Clack did not have consent to enter the house, or probable cause to enter and search his bedroom. The burden is on the State to prove the legality of a warrantless search or arrest. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App.1991). Subject to certain recognized exceptions, a warrantless entry into or search of a residence is presumed to be unreasonable. *See Johnson v. State,* 226 S.W.3d 439, 443 (Tex.Crim.App.2007). The United States Supreme Court stated in *Payton v. New York* that "[t]he Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home. . . ." 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. at 590, 100 S.Ct. 1371.

### PROBABLE CAUSE

■ Ordinarily an officer must have probable cause to enter the home without a warrant, and exigent circumstances must exist that justify an immediate need to enter. *See Parker v. State,* 206 S.W.3d 593, 597 (Tex.Crim.App.2006). " 'Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found.' " *Id.* (quoting *Estrada v. State,* 154 S.W.3d 604, 609 (Tex.Crim.App.2005)). To determine the existence of exigent circumstances, a court considers the degree of urgency and the amount of time necessary to obtain a warrant; (2) the reasonableness of the belief that contraband was subject to destruction or removal; (3) the possibility of danger to the police officers securing the site pending the application for a warrant; (4) the suspect's awareness of police presence or surveillance; and (5) the ready destruction of the contraband. *See McNairy v. State,* 835 S.W.2d 101, 107 (Tex.Crim.App.1991).

■ Officer Clack came to the residence after the dispatcher informed him of a tip that someone was smoking marijuana in the home in the presence of a child. There is no evidence regarding the source of the information given to the dispatcher and communicated to Officer Clack. The anonymous tip gave no indication of when the observation had been made, or whether the informant was present in the home at the time of the alleged occurrence. Prior to the officer's entry, there was no corroboration of the tip; and the officer did not testify to any odor of marijuana emanating from the residence while he was standing at the door. Although police had responded to calls regarding the residence before, no drugs had been found there. The officer received no information about any weapons in the home. Although a tip coupled with observations by police may ultimately present probable cause, "[a]n anonymous tip standing alone will rarely supply police with reasonable suspicion,

much less probable cause." *Turner v. State*, 261 S.W.3d 129, 134 (Tex.App.-San Antonio 2008, no pet.) (citing *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)).

We conclude the totality of the circumstances in this case did not give the officer probable cause to enter the residence. Officer Clack knew about the residence and its occupants. The police had responded to harassment and noise calls there in the past. Other than the allegation from an unidentified source of drug use in front of children in the home, there was no specific information regarding appellant's current possession of drugs. *See State v. Hoffman*, 293 S.W.3d 633, 636 (Tex.App.-San Antonio 2009, pet. ref'd) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)); *see also United States v. Scroggins*, 599 F.3d 433, 444 (5th Cir.2010) ("[T]he government cites no authority to support the proposition that police may stop and frisk an individual in his own home based on the same indications of criminality that would allow the detention elsewhere. The *Terry* doctrine was developed to determine when police could 'detain individuals on the street.'") (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir.1994)). Moreover, after the officer talked with Ms. Pace by telephone, he knew that the child was with her in her vehicle and not at the residence. Appellant's retreat into the residence was legally insufficient to establish probable cause that the instrumentality of a crime or evidence of a crime would be found in the residence. *See Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Id.*

## CONSENT

One exception to the warrant requirement for entry into a residence is a voluntary consent to search. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex.Crim.App. 2007). So long as consent is voluntarily given and not the result of express or implied coercion or duress, a consent to search satisfies the Fourth Amendment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The State may show that "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

The Court of Criminal Appeals recently held that "[a] third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched." *Hubert v. State*, 312 S.W.3d 554, 560 (Tex.Crim.App.2010) (not yet released for publication). Pursuant to an arrest warrant, the defendant in *Hubert* was arrested on the porch of the home he shared with his grandfather. *Id.* at 556–57. Police placed the defendant in the squad car and then, with the grandfather's consent, searched the entire house, including defendant's bedroom. *Id.* The Court stated, "The third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises or property." *Id.* at 560.

No mention is made in *Hubert* of a present, non-consenting defendant. *See id.* Generally, voluntary consent given by a third party is not considered valid as to the defendant if the defendant is present and expressly refuses to consent. *Georgia*

*v. Randolph,* 547 U.S. 103, 106, 114, 120, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

In *Georgia v. Randolph,* the Supreme Court held "that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." 547 U.S. at 120, 126 S.Ct. 1515 (footnote omitted). The Court distinguished other circumstances where "the people living together fall within some recognized hierarchy, like a household of parent and child[.]" *Id.* at 114, 126 S.Ct. 1515. Furthermore, when the police are "lawfully in the premises, there is no question that they could seize any evidence in plain view[.]" *Id.* at 118, 126 S.Ct. 1515 (citing *Texas v. Brown,* 460 U.S. 730, 737–39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). Citing *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Court also noted that exigent circumstances, including "protecting the safety of the police officers," might justify a warrantless search. *Randolph,* 547 U.S. at 117 n. 6, 126 S.Ct. 1515.

■ In this case, appellant was present in the residence and had authority over his room. He told the officer the house was not his, and the officer could not search it. The "hierarchy" that appellant explained to Clack was understood by the officer from his past experience with the family. The officer called Ms. Pace. When the officer told appellant that Ms. Pace consented to the entry and search, appellant attempted to slam the door shut. At that point, both the officer and appellant knew that Clack had Ms. Pace's authorization to enter the house. With Ms. Pace's consent, the officer could legally enter the house to conduct a limited welfare check.

■ Leesa Pace testified, however, that appellant's bedroom door had a lock on it, that she normally knocked before entering, and that her consent to search did not extend to appellant's bedroom. Appellant was present; he is an adult, not a child, and under *Georgia v. Randolph,* Leesa Pace's consent to conduct a limited welfare check would be insufficient without more to validate the search of appellant's room over his express refusal to consent.

### OFFICER SAFETY

■ We conclude this case turns on the reasonableness of Officer Clack's check for his own safety. *See id.* (Protecting the safety of police officer might justify warrantless search.). Concern for officer safety may justify a cursory inspection when the following elements are met:

> First, the police must have entered legally and for a legitimate law enforcement purpose. Second, the officers must have a reasonable, articulable suspicion that the area to be swept contains a person posing a danger to those on the scene. Third, the protective sweep must be limited to a cursory inspection of only those spaces where a person may hide; it is not a full search of the premises. Finally, officers must conclude the sweep once they have dispelled their reasonable suspicion of danger, and they may not continue the sweep after they are no longer justified in remaining on the premises.

*United States v. Mata,* 517 F.3d 279, 286 (5th Cir.2008) (footnotes omitted).

The Court of Criminal Appeals held in *Worthey v. State,* 805 S.W.2d 435, 439 (Tex.Crim.App.1991) that an officer's self-protective search for weapons inside a defendant's purse was reasonable. While officers were searching a residence pursuant to a search warrant, a woman, who was not named in the warrant, approached the premises. *Id.* at 437. She walked to the

front porch of the premises, and officers told her to "keep [her] hands where they were." *Id.* She then "clutched the purse and turned to her side so that the purse and her right hand were away from the officer." *Id.* Because the officer thought she might have a weapon inside the purse, he removed the bag and conducted a pat down of the purse. Unable to tell if the purse contained a weapon, he then searched the purse's interior for a weapon. The purse contained contraband. The Court held that "the officer need only have a reasonable belief, not probable cause, to conduct a self-protective search." *Id.*

Similarly, in *Michigan v. Long,* the United States Supreme Court considered the validity of a "stop and frisk," as applied to the passenger compartment of a vehicle, when the officers had neither probable cause nor a warrant. *Michigan v. Long,* 463 U.S. 1032, 1035–36, 1049–50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The Court explained that " '[the] issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Long,* 463 U.S. at 1050, 103 S.Ct. 3469 (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The Court held that the protective search of the vehicle's passenger compartment, during a lawful investigatory stop, was reasonable. *See Long,* 463 U.S. at 1035, 103 S.Ct. 3469. The " '[t]ouchstone of our analysis . . . is always 'the reasonableness in all circumstances of the particular governmental intrusion of a citizen's personal security.' " *Long,* 463 U.S. at 1051, 103 S.Ct. 3469 (quoting *Pa. v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), and *Terry,* 392 U.S. at 19, 88 S.Ct. 1868).

 The perspective of a reasonable officer on the scene is a consideration in the analysis of the reasonableness of the governmental intrusion. *Rhodes v. State,* 913 S.W.2d 242, 249 (Tex.App.-Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex.Crim. App.1997). The search here occurred in the home—where, as the Supreme Court has said, "the Fourth Amendment has drawn a firm line"—rather than on a public street or in a vehicle. *See Payton,* 445 U.S. at 590, 100 S.Ct. 1371. Officer Clack had the express consent of Leesa Pace to conduct a limited welfare check of a portion of the house. While her consent did not by itself validate the search of defendant's room over his express refusal to consent, the officer could lawfully enter the house for the purpose of conducting the limited-scope search to which Ms. Pace had agreed. After the officer received consent to perform a welfare check, the quickly evolving facts indicated to the officer that appellant presented a potential danger. Officer Clack testified to his concerns. *See Watson v. State,* 861 S.W.2d 410, 416 (Tex.App.-Beaumont 1993, pet. ref'd) (stating the "officers were fully justified in entering the room and securing the female and the items located in the bathroom for their own personal safety"). Appellant's actions caused Clack to conduct a cursory check for his own safety. *See generally United States v. Maldonado,* 472 F.3d 388, 394–95 (5th Cir.2006); *United States v. Newman,* 472 F.3d 233, 237–38 (5th Cir.2006); *United States v. Jones,* 239 F.3d 716, 718, 721–22 (5th Cir.2001).

 We are to give almost total deference to a trial court's determination of historical facts. *Valtierra,* 310 S.W.3d at 447. The trial judge is the sole trier of fact, and judge of the witnesses' credibility and of the weight to be given their testimony. *Id.* While the trial judge on this record could have found otherwise, the trial judge was not required to reject as unreasonable the officer's testimony of his concerns for his safety. In circumstances where reasonable minds may differ, a trial court may credit the judgment of an experienced law enforcement officer about the

risks of a particular situation. *See Cardenas v. State*, 115 S.W.3d 54, 61 (Tex.App.-San Antonio 2003, no pet.) (citing *United States v. Blount*, 123 F.3d 831, 838 (5th Cir.1997)); *see also Johnson v. State*, 171 S.W.3d 643, 649–50 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) (Officers make split-second decisions in tense and uncertain circumstances.). The trial judge may believe or disbelieve all or part of a witness's testimony, because the trial judge "has the opportunity to observe the witness's demeanor and appearance." *Valtierra*, 310 S.W.3d at 447.

CONCLUSION

A reasonable, articulable suspicion of danger may justify a limited, cursory inspection to dispel the suspicion. *See United States v. Scroggins.* 599 F.3d at 444–45. The trial court's finding that the officer entered the bedroom to ensure his safety is supported by testimony in the record; the officer had a right to be there. Having followed appellant for the purposes of dispelling the suspicion of danger, the officer observed the evidence in plain view. *See Randolph*, 547 U.S. at 118, 126 S.Ct. 1515; *Walter v. State*, 28 S.W.3d 538, 541 (Tex.Crim.App.2000) (citing *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)) (Under the "plain view" doctrine, law enforcement must have a right to be where they are, and it must "be immediately apparent that the item seized constitutes evidence, that is, there is probable cause to associate the item with criminal activity."). The trial court did not abuse its discretion in denying the motion to suppress.

Appellant's issues are overruled. The judgment is affirmed.

AFFIRMED.