

# IN THE
# TENTH COURT OF APPEALS

No. 10-17-00404-CR

RUTHEN JAMES WEEMS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2015-229-C2

# MEMORANDUM OPINION

In three issues, appellant, Ruthen James Weems, challenges his convictions for aggravated assault with a deadly weapon and unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. §§ 22.02, 46.04 (West 2011). Specifically, Weems contends that the trial court: (1) abused its discretion by denying his motion for continuance and motion for new trial; (2) abused its discretion by denying his suppression motion; and (3) failed to properly instruct the jury regarding the culpable

mental states for aggravated assault by threat. Because we overrule all of Weems's issues on appeal, we affirm.

## I.  WEEMS'S MOTION FOR CONTINUANCE AND MOTION FOR NEW TRIAL

In his first issue, Weems complains that the trial court abused its discretion by failing to grant his motion for continuance to secure the testimony of an expert witness— Dr. Charles Bux—and his motion for new trial premised on his motion for continuance. Weems argues that his expert witness would have testified that the victim did not suffer a gunshot wound, contrary to the testimony of several of the State's witnesses.

The denial of a motion for continuance is within the sound discretion of the trial court, and we review a denial for an abuse of discretion. *See Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); *see also Gutierrez v. State*, 446 S.W.3d 36, 38 (Tex. App.—Waco 2014, pet. ref'd). An appellant claiming the erroneous denial of a motion for continuance must show: (1) the trial court erred in denying the motion for continuance; and (2) the denial harmed him in some tangible way. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

A motion for continuance based upon the unavailability of a witness is expressly governed by statute. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 29.06 (West 2006). Article 29.06 provides that, if a continuance is sought because of the absence of a witness, the motion must state: (1) the name and residence of the witness; (2) the diligence used to procure the witness's attendance; (3) the material facts expected to be proved by the

witness; (4) that the witness is not absent by the procurement or consent of the defendant; (5) that the motion is not made for delay; and (6) that there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term. TEX. CODE CRIM. PROC. ANN. art. 29.06. A motion for continuance may be properly denied if the applicant does not present evidence to the court that indicates a probability that a substitute witness can be secured or that the continuance will not result in an indefinite delay. *See Varela v. State*, 561 S.W.2d 186, 191 (Tex. Crim. App. 1978); *Rische v. State*, 746 S.W.2d 287, 290 (Tex. App.—Houston [1st Dist.] 1988), *remanded on other grounds*, 755 S.W.2d 477 (Tex. Crim. App. 1988); *see also Garay v. State*, No. 08-01-00336-CR, 2003 Tex. App. LEXIS 7407, at *11 (Tex. App.—El Paso Aug. 28, 2003, pet. ref'd) (mem. op., not designated for publication).

In his motion for continuance, which was filed on February 3, 2017, Weems stated that Dr. Bux was procured to testify that Weems did not shoot the victim with a firearm and, thus, the victim's injuries were not the result of a gunshot wound. The motion then mentioned that Dr. Bux was unavailable for the week of trial—February 13, 2017— because he was scheduled to attend the American Academy of Forensic Sciences Annual Convention in New Orleans, Louisiana, which is "the leading convention for forensic scientists in the United States." Weems alleged that he found out about this conflict the week prior to the filing of his motion for continuance.

The record shows that, on or about October 5, 2016, the trial court signed an agreed order setting February 13, 2017 as a priority date for a jury trial in this matter.[1]  As such, the parties were aware of the trial setting as early as October 5, 2016.  However, Weems did nothing to confirm the presence of Dr. Bux until less than two weeks before trial, despite having spoken to Dr. Bux "at some point" to determine his opinion in this matter.

Weems expressed in his motion for continuance that Dr. Bux could not attend trial during the week of February 13, 2017, because he was attending an annual conference that surely had been planned far in advance and would have been known to Dr. Bux and, in turn, should have been expressed to Weems and the trial court in a more timely fashion.  Regardless, there is nothing in Weems's motion for continuance adequately explaining why Dr. Bux's attendance at the annual conference was necessary or was a priority when an obvious conflict for which he was being paid existed.

Accordingly, we conclude that Weems has failed to demonstrate that he exercised reasonable diligence in securing Dr. Bux's attendance and in presenting his motion for continuance.  *See* TEX. CODE CRIM. PROC. ANN. art. 29.06(2); *Dewberry v. State*, 4 S.W.3d 735, 756 (Tex. Crim. App. 1999) (interpreting the diligence requirement "to mean not only diligence in procuring the presence of the witness, but also diligence as reflected in the

---

[1] The order states that the priority date for the jury trial was February 13, 2016; however, it is apparent from the record that the order should have reflected the trial date as February 13, 2017, especially considering this order was signed by the parties on October 5, 2016, and filed in the District Clerk's Office on October 6, 2016.

timeliness with which the motion for continuance was presented"); *see also Tucker v. State*, 109 S.W.3d 517, 520 (Tex. App.—Tyler 1999, pet. ref'd) ("Diligence, in the motion for continuance, context, is the exercise of timely and persistent efforts to secure the attendance of witnesses, using the means and agencies provided by law. If defense counsel waits until only a few days before trial to seek to secure a witness for trial, the court may conclude that due diligence has not been used." (internal citations omitted)).

In addition to the foregoing, we also note that Weems's request for a delay is indeterminate. *See Varela*, 561 S.W.2d at 191; *Rische*, 746 S.W.2d at 290; *see also Garay*, 2003 Tex. App. LEXIS 7407, at *11. His written motion "prays that this Honorable Court enter an order removing this case from its present setting of February 13, 2017." However, at the hearing on his motion for continuance, Weems speculated that Dr. Bux needed a delay of the trial for three or four weeks "to work it in his schedule." Weems did not provide any additional specificity as to the length of the potential delay in either his motion or at the hearing on his motion.

Based on the foregoing, we cannot conclude that the trial court abused its discretion by denying Weems's motion for continuance. *See Renteria*, 206 S.W.3d at 699; *see also Gutierrez*, 446 S.W.3d at 38. And furthermore, because Weems's appellate complaints about his motion for new trial are premised on the trial court's denial of a continuance, we cannot conclude that the trial court abused its discretion by denying Weems's motion for new trial. We overrule Weems's first issue.

## II. WEEMS'S MOTION TO SUPPRESS EVIDENCE

In his second issue, Weems asserts that the trial court abused its discretion by denying his motion to suppress evidence. Weems argues that law enforcement impermissibly entered his motel room without consent, a warrant, or exigent circumstances and made observations that were then used to obtain a search warrant for the room.

### A. Standard of Review

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and it application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any

theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When ruling on a motion to suppress evidence, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

**B.     Applicable Law**

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *see Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts a presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672-73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Here, it is undisputed that the initial entry into

the motel room was without a warrant; therefore, we must examine whether the search was reasonable.

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); *see Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135, 124 L. Ed. 2d 334 (1993). These exceptions include "the consent exception, the exigency exception, the automobile exception, the search-incident-to-arrest exception, and the special-needs exception." *State v. Rodriguez*, 521 S.W.3d 1, 10 (Tex. Crim. App. 2017) (internal citations omitted).

Under the exigent-circumstances exception, a warrantless search is reasonable when (1) an officer has probable cause and (2) an exigency exists that requires an immediate entry. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). "Probable cause exists when reasonably trustworthy circumstances within the knowledge of the police officer on the scene would lead him to reasonably believe that evidence of a crime will be found." *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013) (citing

*McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991)).  The *Gutierrez* Court further

clarified the exigency exception as follows:

> We have identified three categories of exigent circumstances that justify a warrantless intrusion by police officers:  1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; 2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and 3) preventing the destruction of evidence or contraband.  If the State does not adequately establish both probable cause and exigent circumstances, then a warrantless entry will not withstand judicial scrutiny.

*Gutierrez*, 221 S.W.3d at 685-86 (citations omitted).

Moreover, even where probable cause and exigent circumstances do not exist, in

some cases, police may conduct a protective sweep of private property.  *Reasor v. State*,

12 S.W.3d 813, 816 (Tex. Crim. App. 2000).  Indeed,

> [u]nder the protective-sweep exception, when an officer arrives at a residence in response to a reported emergency and has an objectively reasonable belief, based on specific and articulable facts, that there may be a person inside the residence who poses a danger to the officer or to others in the area, the officer may perform a "protective sweep" of the residence without a warrant or consent.

*Lipscomb v. State*, 526 S.W.3d 646, 655 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Furthermore, a protective sweep is not a full search of the premises; rather, it is a cursory

inspection of those space where a person might be hiding.  *Id.*  "It may last only long

enough to dispel the reasonable suspicion of danger and no longer than officers are

justified in remaining in the home."  *Id.*

Nevertheless, when assessing a warrantless entry, whether justified as a protective sweep or by exigent circumstances, an objective standard is utilized based on the facts reasonably available to the officer at the time of the search. *Cole v. State*, 490 S.W.3d 918, 923 (Tex. Crim. App. 2016). The reviewing court must evaluate the circumstances on a case-by-case basis, looking at the totality of the circumstances. *Weems v. State*, 493 S.W.3d 574, 578 (Tex. Crim. App. 2016). "A reasonable, articulable suspicion of danger may justify a limited, cursory inspection to dispel the suspicion." *Pace v. State*, 318 S.W.3d 526, 534 (Tex. App.—Beaumont 2010, no pet.).

## C.     Discussion

At the suppression hearing, Sergeant John Allovio of the Waco Police Department testified that, at the time officers knocked on the door of the Motel 6 room, they knew that a man had suffered a gunshot wound; witnesses had reported that the suspected shooter and a female companion had fled the scene; they had descriptions of both of the subjects, as well as the vehicle they were driving; a vehicle matching that description was found at the Motel 6; and the motel clerk confirmed that the occupants of the vehicle had checked into the motel. Sergeant Allovio recounted that, after speaking with the motel clerk, officers were able to determine which room the occupants of the vehicle were in and obtained a key for that room. However, rather than using the key to the room, the officers knocked on the door. Sergeant Allovio stated that, after several minutes, a female, Holly Taylor, opened the door to the room, which allowed him to see inside the

room and notice that Weems was in the back of the room. Both Taylor and Weems fit the suspects' descriptions provided the officers by witnesses at the scene of the shooting.

Thereafter, officers requested that Taylor step outside the motel room. Sergeant Allovio made sure that the door to the motel room stayed open because officers were unsure if a gun was in the room. After being warned pursuant to *Miranda*[2], Taylor admitted that she, as well as Weems, was at the scene of the shooting, but she denied hearing gunfire. Given the evidence above, officers had probable cause to believe that evidence of a crime would be found in the motel room.

Officers then entered the motel room, detained Weems, read Weems his *Miranda* rights, and requested consent to search the motel room. Weems did not consent to a search of the room, and Sergeant Allovio left to obtain a search warrant. Sergeant Allovio instructed the officers that remained at the room "to secure the room so that no one could enter and disturb the room until either a search warrant was granted or denied."

Later in the day, Sergeant Allovio obtained a warrant to search the motel room, which resulted in the discovery of a Webley Mark IV .38 caliber pistol with two spent shell casings and two live rounds inside, a digital scale that tested positive for the presence of methamphetamine, clothing that matched the clothing description provided by the victim, two cellular telephones, and $1,085 in cash. Sergeant Allovio denied that the search warrant was based on the initial "search" of the room.

---

[2] *See generally Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The evidence presented at the suppression hearing, when viewed in the light most favorable to the trial court's ruling, supports the denial of Weems's motion to suppress based on either the exigent-circumstances or protective-sweep doctrines. *See Gutierrez*, 221 S.W.3d at 685-86; *Lipscomb*, 526 S.W.3d at 655; *Pace*, 318 S.W.3d at 534. Specifically, once Taylor opened the door, officers were able to determine that the two occupants matched the descriptions provided by witnesses. Furthermore, Taylor confirmed that both she and Weems were present at the scene of the shooting. At this point, the officers were justified in entering the motel room to do a protective sweep and secure the premises, especially considering a gun was involved in the underlying incident for which the officers were investigating. *See Gutierrez*, 221 S.W.3d at 685-86; *Lipscomb*, 526 S.W.3d at 655; *Pace*, 318 S.W.3d at 534. The protective sweep was done for the purpose of the safety of the officers and others. There was no indication at the suppression hearing that any evidence was collected during this initial entry. In fact, once the protective sweep was concluded, the officers secured the scene and properly obtained a search warrant. It was only after execution of the warrant that the pistol, drug paraphernalia, and additional evidence was found.

Therefore, because the officers had the right to enter the motel room for the purpose of the safety of the officers and others, there was no basis for granting Weems's motion to suppress. *See Gutierrez*, 221 S.W.3d at 685-86; *Lipscomb*, 526 S.W.3d at 655; *Pace*, 318 S.W.3d at 534. As such, we cannot conclude that the trial court abused its discretion

by denying Weems's motion to suppress.  *See Crain*, 315 S.W.3d at 48; *Garcia-Cantu*, 253 S.W.3d at 241; *Guzman*, 955 S.W.2d at 88-89.  We overrule his second issue.

### III.  THE JURY CHARGE

In his third issue, Weems argues that the trial court failed to properly instruct the jury regarding the culpable mental states for aggravated assault by threat, and because of this error, Weems contends that he suffered egregious harm.  We disagree.

## A.  Standard of Review

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge.  *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003).  If an error was properly preserved by objection, reversal will be necessary if the error is not harmless.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Conversely, if error was not preserved at trial by a proper objection, as is the case here, a reversal will be granted only if the error presents egregious harm, meaning Weems did not receive a fair and impartial trial.  *Id.* To obtain a reversal for jury-charge error, Weems must have suffered actual harm and not just merely theoretical harm.  *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

In determining whether charge error has resulted in egregious harm, we consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and

the weight of the probative evidence; (3) the final arguments of the parties; and (4) any other relevant information revealed by the trial court as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.    Discussion**

The culpable mental states in the penal code encompass three possible conduct elements that may be involved in an offense: (1) nature of the conduct; (2) result of the conduct; and (3) circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2011); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). In other words, some crimes are defined in terms of the result and some are defined in terms of conduct or circumstances. When an offense is specifically delineated as to the type of conduct, the trial court should limit the statutory definitions in the jury charge to the culpable mental state required. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *see also Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991, pet. ref'd). Weems alleges that the charge provided result-oriented definitions for the culpable mental states for all of the aggravated-assault allegations and failed to furnish the conduct-oriented definitions that apply to assault by threat.

Section 22.01(a)(2) of the Penal Code provides that: "A person commits an offense if the person . . . *intentionally or knowingly* threatens another with imminent bodily injury, including the person's spouse . . . ."  TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2018) (emphasis added).  Assault by threat "is conduct-oriented, focusing upon the act of making a threat, regardless of any result that might cause."  *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008).

The original indictment in this case charged Weems with, among other things, aggravated assault with a deadly weapon causing bodily injury.  Approximately two months prior to trial, the State amended the indictment to allege the commission of aggravated assault by different manner and means in two paragraphs.  The first paragraph alleged that Weems "intentionally, knowingly, and recklessly cause[d] the bodily injury to ERNEST BRADSHAW by shooting and/or striking" Bradshaw while using or exhibiting a firearm, and the second paragraph alleged that Weems "intentionally and knowingly threaten[ed]" Bradshaw "with imminent bodily injury by shooting at or in the direction of" Bradshaw with a firearm.

The abstract portion of the jury charge stated the following:

> Our law provides that a person commits the offense of Assault if the person intentionally, knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens another with imminent bodily injury.

> A person commits Aggravated Assault if the person commits an assault, as defined above, and uses or exhibits a deadly weapon during the commission of the assault.

With respect to the culpable mental states, the abstract portion of the jury charge provided statutory definitions for intentional, knowing, and reckless conduct.

However, in the application portion of the charge, the trial court correctly tailored the culpable mental states to the charged offense of aggravated assault by threat. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) ("A person commits an offense if the person . . . *intentionally or knowingly* threatens another with imminent bodily injury, including the person's spouse . . . ."); *see also id.* § 22.02. Specifically, the application portion of the jury charge provided the following, in relevant part:

COUNT I

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of November, 2014, in McLennan County, Texas, the Defendant Ruthen James Weems, did then and there intentionally, knowingly, or recklessly cause bodily injury to Ernest Bradshaw by shooting and/or striking the said Ernest Bradshaw, and the Defendant did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of said assault; or did then and there *intentionally or knowingly* threaten Ernest Bradshaw with imminent bodily injury by shooting at or in the direction of the said Ernest Bradshaw, and did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of said assault, then you will find the Defendant guilty of Aggravated Assault as charged in the indictment.

> . . .

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of November, 2014, in McLennan County, Texas, the Defendant, Ruthen James Weems, did then and there intentionally, knowingly, or recklessly cause bodily injury to Ernest Bradshaw by shooting and/striking the said Ernest Bradshaw, and the Defendant did then and there use or exhibit a deadly weapon, to wit: a firearm, during the

commission of said assault; or did then and there *intentionally or knowingly* threaten Ernest Bradshaw with imminent bodily injury by shooting at or in the direction of the said Ernest Bradshaw, and did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of said assault, but you further find from the evidence, or you have a reasonable doubt thereof, that at that time the Defendant was under attack or attempted attack from the complainant, Ernest Bradshaw, and that the Defendant reasonably believed, as viewed from his standpoint, that such deadly force as he used, if any, was immediately necessary to protect himself against such attack or attempted attack, then you would acquit the Defendant and say by your verdict "not guilty."

(Emphasis added). As shown above, the intentional and knowing culpable mental states in the application portion of the jury charge only applied to the conduct—the act of making a threat. *See Landrian*, 268 S.W.3d at 536. The language contained in the application portion of the charge as to the charge of aggravated assault by threat did not apply to any other conduct or the result of the conduct and tracked the allegation made in the indictment.

The Court of Criminal Appeals has held that "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) (holding that the inclusion of a merely superfluous abstraction never produces reversible error in the court's charge because it has no effect on the jury's ability to implement fairly and accurately the commands of the application paragraph or paragraphs) Abstract statements of the law that go beyond the allegations in the

indictment will not present reversible error when the trial court's application of the law to the facts effectively restricts the jury's deliberation to the allegations in the indictment. *Grady v. State*, 614 S.W.2d 830, 831 (Tex. Crim. App. 1981).

Assuming, without deciding, that the abstract portion of the charge contained error, we cannot conclude that the purported error was egregious because the application paragraph correctly limited the culpable mental states as charged in the indictment. *See* TEX. PENAL CODE ANN. § 22.01(a)(2); *see also Medina*, 7 S.W.3d at 640; *Plata*, 926 S.W.2d at 302-03; *Grady*, 614 S.W.2d at 831. Moreover, Weems concedes that two of the three remaining factors—the state of the evidence and other relevant information—in the egregious-harm analysis do not weigh in favor of a finding of egregious harm. And while the parties did refer to the culpable mental states for the charged offense in closing argument, the focus of the arguments was on Weems's self-defense contention, and there is nothing in the record demonstrating that the parties' closing arguments misstated the appropriate culpable mental states as they corresponded with each charged offense. Therefore, given that none of the *Allen* factors weigh in favor of a finding of egregious harm, we conclude that any error in the abstract portion of the charge was not calculated to injure Weems's rights or deprive him of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121. Accordingly, we overrule Weems's third issue.

### IV.   CONCLUSION

Having overruled all of Weems's issues on appeal, we affirm the judgments of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Neill
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed April 10, 2019
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the Court's judgment.  A separate opinion will not issue.)

